# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

PAUL T. HARDY, et al.,                          )
                                                )
                            Plaintiffs,          )
                                                )          CIVIL ACTION NO.
               v.                                )          1:11-cv-01739-RBW
                                                )
MARGARET A. HAMBURG, Commissioner,              )
Food and Drug Administration, et al.,           )
                                                )
                            Defendants           )
_____)

## REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Despite its length, plaintiffs' opposition to defendants' motion to dismiss does not

explain why their claims are not precluded by the Civil Service Reform Act ("CSRA"), and their

simultaneous pursuit of relief through the CSRA process regarding the same claims demonstrates

plaintiffs' own belief that their claims are subject to the CSRA.  Moreover, plaintiffs are

challenging several disparate personnel actions taken against each of them individually, and such

a collection of employment decisions does not constitute a regulation or rule that stands

independently from their CSRA claims.  Plaintiffs should not be able to obtain any advantage,

jurisdictionally or strategically, from joining a divergent assemblage of personnel actions in one

lawsuit.  Further, the Supreme Court's recent decision in *Elgin v. Department of the Treasury*

strongly affirms that constitutional challenges arising out of federal employment, like those of

the plaintiffs here, must be pursued through the CSRA.  Plaintiffs will have the opportunity to

seek judicial review in the Federal Circuit, as appropriate, after completing the administrative

process they have already begun.

All six of the plaintiffs have joined this effort to circumvent CSRA preclusion, and the

claims of all six of the plaintiffs should share the same fate.  All of the plaintiffs submitted

CSRA complaints to the Office of Special Counsel, and those complaints are still pending for five of them (all except plaintiff Hardy).  Moreover, assuming Mr. Hardy's claims do not share the fate of those of all the plaintiffs, he has failed to exhaust the administrative remedies available to him as an officer in the Public Health Service Commissioned Corps, and he lacks standing because his discharge from the Commissioned Corps was required by his failure to secure a promotion.

Finally, plaintiffs' ninth, eleventh, and twelfth causes of action are also subject to dismissal.  Nothing in plaintiffs' opposition establishes their standing to pursue the ninth or eleventh causes of action, and they fail to address defendants' argument that the twelfth cause of action relies on a statute as to which there is no private right of action.

## RESPONSE TO "SUMMARY OF THE FACTS"

Plaintiffs' "Summary of the Facts" is a lengthy (eleven-page), detailed recitation of their factual allegations and of developments that allegedly occurred after they filed the Second Amended Complaint (Doc. 36 at 1-12).  Most of this material is irrelevant on a motion to dismiss.  On such a motion, the court need only determine "whether the complaint has properly stated a claim" within the court's jurisdiction, "not whether the plaintiff will succeed on the merits."  *See Cooper v. First Gov't Mortg. & Investors Corp.,* 206 F. Supp. 2d 33, 36 (D.D.C. 2002) (citations omitted); *see also James v. England*, 332 F. Supp. 2d 239, 242 (D.D.C. 2004) ("The merits of the plaintiffs' suit are not relevant to the questions currently before this Court at this time [on a motion to dismiss].").[1]

---

[1] Other portions of plaintiffs' opposition openly argue the merits of their claims rather than the issues involved in the present motion to dismiss (*e.g.*, Doc. 36 at 19-22, 29-31). Plaintiffs argue, for example, that an email enjoys the same "constitutional protection" as a physical letter and that the constitutional right of association encompasses "privacy in associations" (Doc. 36 at 21-22, 30).  Much of the material in the exhibits to plaintiffs' opposition also relates to the merits.  All of this material is irrelevant on the present motion.

Perhaps more notable is that plaintiffs' "Summary of the Facts" does *not* refute or address several important facts that *are* relevant to defendants' motion to dismiss.  For example, plaintiffs seem to confirm that they allege classic claims of whistleblower retaliation of the kind that must normally be pursued through the CSRA.  They repeatedly reassert, as alleged in the Second Amended Complaint, that they are "whistleblowers" and that defendants' alleged actions constituted "retaliation" (Doc. 36 at 3, 5, 6, 9, 23, 28, 31, 34, 41, 44).  Moreover, plaintiffs do not dispute, as a matter of legal background, that the Whistleblower Protection Act and its procedures were "specifically designed to address" allegations of "retaliation for making protected disclosures."  *See Runkle v. Gonzales*, 391 F. Supp. 2d 210, 235 (D.D.C. 2005).

Further, plaintiffs do not dispute that all of them (except plaintiff Hardy) are seeking relief in the Office of Special Counsel ("OSC"), under the CSRA, regarding the same acts of whistleblower retaliation that are alleged in the Second Amended Complaint (Doc. 31-4).  Moreover, the OSC is indisputably investigating these same allegations (Docs. 31-5, 31-6).  In short, plaintiffs do not dispute that they are seeking judicial and administrative relief regarding the same claims simultaneously.

## ARGUMENT

I.   Plaintiffs' Claims Are Precluded by the Civil Service Reform Act

Plaintiffs do not – and cannot – dispute that "the CSRA provides the exclusive set [of] remedies for federal employees who face retaliation because of whistleblowing."  *See Harris v. Bodman*, 538 F. Supp. 2d 78, 82 (D.D.C. 2008).  The "exclusivity of the CSRA," *see Roberts v. Department of Justice*, 366 F. Supp. 2d 13, 20 (D.D.C. 2005), applies whenever federal employees challenge personnel actions, including when they allege that such actions violate their constitutional rights, *see Steadman v. Governor, United States Soldiers' & Airmen's Home*, 918 F.2d 963, 967 (D.C. Cir. 1990), and when they seek "to enjoin [an agency] from continuing" to

violate their rights." *See Roberts*, 366 F. Supp. 2d at 20-21.  The courts refer to this principle as "CSRA exclusivity," "CSRA preclusion," or "CSRA preemption."  *See, e.g., Elgin v. Department of the Treasury*, 132 S. Ct. 2126, 2134 (2012); *Graham v. Ashcroft*, 358 F.3d 931, 935 (D.C. Cir. 2004); *Mahoney v. Donovan*, 824 F. Supp. 2d 49, 63-65 (D.D.C. 2011).[2]

Based on these precedents, plaintiffs' claims must be dismissed.  Plaintiffs assert several "exceptions" to CSRA preclusion, but most of them are of plaintiffs' own creation.  The only exception they assert that has any basis in the case law relates to challenging a government rule or regulation that "stands independently" from personnel actions, *see Weaver v. U.S. Information Agency*, 87 F.3d 1429, 1434 (D.C. Cir. 1996), but the plaintiffs here cannot point to any such rule or regulation.  Others of plaintiffs' arguments are foreclosed by the Supreme Court's recent decision in *Elgin v. Department of the Treasury*, and plaintiffs' own concurrent pursuit of the CSRA process confirms their belief in the applicability of that process to their claims.

Where claims are precluded by the CSRA, the district court lacks jurisdiction over them. *See Elgin*, 132 S. Ct. at 2132-34, 2139, 2140.  The plaintiffs here concede that they "bear[] the burden of demonstrating that the court has jurisdiction" (Doc. 36 at 1), and they have failed to do so.  As noted already, however, CSRA preclusion does not foreclose judicial review of plaintiffs' claims, but only "channels" them for consideration in the Federal Circuit after completion of the administrative process.  *See Elgin, id.* at 2132.[3]

---

[2] The plaintiffs, seeking to downplay the significance of this concept by tying it to a single decision, repeatedly call it the "*Bush* doctrine," referring to *Bush v. Lucas*, 462 U.S. 367 (1983).  That phrase does not, however, appear anywhere in the CSRA case law; but more importantly, many decisions – including Supreme Court decisions as recently as *Elgin* – have reinforced the exclusivity of the CSRA.

[3] After the submission of plaintiffs' complaints to the OSC, Congress amended the CSRA to provide for judicial review of certain CSRA matters in "the Federal Circuit *or any court of appeals of competent jurisdiction*," for a two-year period beginning with the effective date of the Whistleblower Protection Enhancement Act of 2012.  *See* Pub. L. No. 112-199, § 108, 126 Stat. 1465, 1469 (2012) (codified at 5 U.S.C. § 7703(b)(1)(B)) (emphasis added).

A.     Plaintiffs Have Chosen to Pursue Their Claims Through the CSRA
       Process, and the Office of Special Counsel Is Investigating Them

As noted above in relation to the facts, plaintiffs do not dispute that they are seeking judicial and administrative relief regarding the same claims simultaneously.  Specifically, all of the plaintiffs have submitted complaints to the Office of Special Counsel asserting that defendants engaged in whistleblower retaliation, and those complaints are still pending for five of the six plaintiffs.  Furthermore, plaintiffs' arguments in response to defendants' motion to dismiss do not address the effect of this circumstance; they ignore the fact that one purpose of the CSRA, according to the Supreme Court, is to prevent such "simultaneous proceedings."  *Elgin*, 132 S. Ct. at 2135.  Plaintiffs' failure to explain satisfactorily why they should be allowed to pursue such proceedings should compel the dismissal of their claims in this action.

Notwithstanding plaintiffs' simultaneous pursuit of the same claims in this Court and through the CSRA process, they argue that CSRA preclusion does not apply here because they have not "suffered an actual adverse action" (Doc. 36 at 13).  That assertion is belied, however, by plaintiffs' own submission of complaints to the Office of Special Counsel and that Office's ongoing investigation of the complaints, given that the OSC hears and investigates complaints regarding adverse actions and other personnel actions under the CSRA.  In any event, the Second Amended Complaint herein does, in fact, allege acts that constitute personnel actions under the CSRA, including termination of employment, issuance of warning letters and negative performance reviews, and threats of other disciplinary action (Doc. 28 ¶¶ 88, 103, 104, 158 & pp. 29-31). *See* 5 U.S.C. §§ 2302(a)(2)(iii), (viii), 2302(b)(8); *see also Weaver*, 87 F.3d at 1432-33 (written or oral admonishment is a "personnel action" under CSRA).

B.     The Supreme Court's Recent Decision in *Elgin* Reaffirms CSRA
       Preclusion and Forecloses Certain of Plaintiffs' Arguments

The Supreme Court's decision in *Elgin v. Department of the Treasury*, 132 S. Ct. 2126

(2012) – which plaintiffs' opposition mentions only in passing – is central to the issues presented

here.  The *Elgin* decision strongly reaffirmed CSRA preclusion; it confirmed that constitutional

challenges arising out of federal employment must be pursued through the CSRA process; and it

forecloses others of plaintiffs' arguments herein.

The question presented in *Elgin* was "whether the CSRA precludes district court

jurisdiction over [a federal employee's] claims even though they are constitutional claims for

equitable relief."  *Id*. at 2132.  The Court answered that question affirmatively, noting that

Congress has "simply channel[ed] judicial review of [such] constitutional claim[s]" through the

CSRA process.  *Id*. at 2132.  Even more specifically, the Court took it as well-settled that the

CSRA encompasses an employee's claim "that an agency took adverse employment action in

violation of an employee's First or Fourth Amendment rights."  *Id.* at 2134.

The plaintiffs in *Elgin* sought to distinguish cases challenging a statute directly (like their

own case) from cases alleging that an agency merely "acted in an unconstitutional manner" –

which the plaintiffs conceded were covered by the CSRA – but the Court rejected that

distinction.  *Id*. at 2136 n.5.  The Court also rejected any concerns about the authority of the

Merit Systems Protection Board to decide constitutional questions, and held that "the CSRA

provides review in the Federal Circuit, an Article III court fully competent to adjudicate

[plaintiffs' constitutional] claims."  *Id*. at 2136-37.[4]  Lastly, the Court noted that one purpose of

---

[4] The availability of judicial review in the Federal Circuit assuages plaintiffs' stated
concern about obtaining adequate relief from the Office of Special Counsel or the Merit Systems
Protection Board (Doc. 36 at 19 n.9).  That court, obviously, can provide meaningful review after
the completion of administrative review.  *See Elgin*, 132 S. Ct. at 2132 ("[T]he CSRA does not
foreclose all judicial review of petitioners' constitutional claims, but merely directs that judicial

the CSRA is to foreclose "simultaneous proceedings" regarding the same agency actions before administrative tribunals and the district courts.  *Id*. at 2135.  The holding and reasoning in *Elgin* confirm the primacy of CSRA preclusion:  If even a facial challenge to a statute must be pursued through the CSRA process, then any other constitutional challenge arising out of federal employment must also be pursued through that process.

In this case, plaintiffs' claims amount to an assertion that defendants "acted in an unconstitutional manner" by taking personnel actions that violated their constitutional rights under the First, Fourth, and Fifth Amendments.  Moreover, plaintiffs' efforts in this matter confirm the Supreme Court's concern about "simultaneous proceedings" that CSRA preclusion is meant to serve.  *Id*.  And, as also reiterated in *Elgin*, CSRA preclusion does not mean that a claim is precluded entirely, but only that it must be pursued through the process prescribed in the statute, with judicial review in the Court of Appeals for the Federal Circuit.  *See* 5 U.S.C. § 7703(b)(1).

*Elgin* also forecloses others of plaintiffs' arguments in this case.  Most notably, plaintiffs argue that the CSRA does not apply here because they seek declaratory and injunctive relief (Doc. 36 at 16, 24).  In other words, plaintiffs seem to assert that the CSRA does not apply where federal employees seek equitable relief from their employing agencies, at least on constitutional claims.  In support of this argument, plaintiffs quote the following language from *Spagnola v. Mathis*, 859 F.2d 223 (D.C. Cir. 1988) (en banc):

> While we decline to extend *Bivens* remedies to [the plaintiffs here], we do not suggest that the CSRA precludes the exercise of federal jurisdiction over the constitutional claims of federal employees and job applicants altogether.  On the contrary, time and again this court has affirmed the right of civil servants to seek

---

review shall occur in the Federal Circuit.  Moreover . . . the Federal Circuit is fully capable of providing meaningful review of petitioners' claims.").

equitable relief against their supervisors, and the agency itself, in vindication of
their constitutional rights.

*Id*. at 229-30 (citations omitted) (Doc. 36 at 13, 36).  Plaintiffs also quote *Hubbard v. EPA*

*Administrator*, 809 F.2d 1 (D.C. Cir. 1986), the panel decision that *Spagnola v. Mathis* affirmed

en banc, to the effect that "federal courts have jurisdiction to grant equitable relief to remedy

agency violations of constitutional rights [in favor of federal employees].  There is a presumed

availability of federal equitable relief against threatened invasions of constitutional interests."

*Id*. at 11 (internal quotation marks omitted) (Doc. 36 at 14-15).[5]

After *Elgin*, however, these aspects of *Spagnola* and *Hubbard* are not good law.  The

petition for certiorari in *Elgin* was based on a circuit split; the question presented was as follows:

> Do federal district courts have jurisdiction over constitutional claims for equitable
> relief brought by federal employees, as the Third and *D.C. Circuits* have held, or
> does the Civil Service Reform Act impliedly preclude that jurisdiction, as the
> First, Second, and Tenth Circuits have held?

Cert. Pet., *Elgin v. Department of the Treasury*, 2011 WL 2689010, at *i, (No. 11-45 July 7,

2011) (emphasis added).  The petition described the D.C. Circuit's *Spagnola* and *Hubbard*

decisions, quoting the former to the effect that the court had "affirmed the right of civil servants

to seek equitable relief against their supervisors, and the agency itself, in vindication of their

constitutional rights."  *Id*. at *16.  The petition noted that other appellate courts had held

differently, including the Second Circuit, which it quoted as saying that "because Congress had

'plainly expressed its intent' that the CSRA be the 'comprehensive scheme addressing the

employment rights of federal employees,' [the plaintiff's] claims for equitable relief were . . .

precluded by the CSRA" along with his monetary claims.  *Id*. at *20 (quoting *Dotson v. Griesa*,

---

[5] Plaintiffs also rely (Doc. 36 at 14, 36) on *Webster v. Doe*, 486 U.S. 592 (1988), but the
employer in that case was the Central Intelligence Agency, to which the CSRA does not apply.
*See* 5 U.S.C. § 7511(b)(7).

398 F.3d 156, 182 (2d Cir. 2005)).  The First Circuit – from whose decision the petitioner sought

certiorari – had agreed with the Second Circuit.  *Id*. at 19.

      The Supreme Court granted certiorari to resolve this split in the circuits – that is, "to

decide whether the CSRA precludes district court jurisdiction over petitioners' claims even

though they are constitutional claims for equitable relief."  132 S. Ct. at 2132.  As described

already, the Court sided with the First and Second Circuits on this question, concluding that "the

statutory review scheme is exclusive" and affirming the decision below.  *Id*. at 2135.  Thus, the

Court in *Elgin* rejected the conflicting position of the D.C. Circuit in *Spagnola* and *Hubbard*, and

the plaintiffs here cannot rely on those decisions to assert that the CSRA does not apply to their

claims for equitable relief.[6]

    C.    **Plaintiffs Cannot Bypass the CSRA Process on the Theory**
                **That They Are Challenging a "Regulatory Scheme"**

      Further attempting to avoid CSRA preclusion, plaintiffs argue that they are challenging

an "agency rule" or "regulatory scheme" to which the CSRA process does not apply (Doc. 36 at

15-16, 27).  For this proposition, plaintiffs cite primarily *Weaver v. U.S. Information Agency*, 87

F.3d 1429 (D.C. Cir. 1996).  The principle espoused in *Weaver* cannot, however, apply here

because the plaintiffs are complaining of personnel actions, and they cannot point to any rule or

---

[6] *Elgin* also forecloses plaintiffs' reliance on the dictum in *Bush v. Lucas*, 462 U.S. 367, 385 n.28 (1983), to the effect that "warrantless searches [and] uncompensated takings . . . would not be defined as 'personnel actions' within the [CSRA] scheme" (Doc. 36 at 14, 18).  As described above, *Elgin* has now clarified that alleged constitutional violations, including violations of the Fourth Amendment, "must be brought within the CSRA scheme."  132 S. Ct. at 2134.  *Elgin* likewise forecloses plaintiffs' reliance on *Stewart v. Evans*, 275 F.3d 1126, 1130 (D.C. Cir. 2002), which cited the *Bush* footnote to the same effect (Doc. 36 at 14, 28).  Furthermore, if claims for violation of the Fourth Amendment must be brought under the CSRA, as the Court said in *Elgin*, there is no reason to believe that claims of uncompensated taking under the Fifth Amendment should be treated differently.  Finally, plaintiffs' reliance on the *Bush* dictum is also belied by their own pursuit of their claims through the CSRA process.

"regulatory scheme" of the kind involved in *Weaver*.  Other similar cases also show that this principle does not apply here.

The plaintiff in *Weaver*, an employee of the Department of State, challenged a provision of that agency's Foreign Affairs Manual (which the court called a "regulation") requiring employees to submit certain outside writings for agency review before publication.  *Id*. at 1431-32, 1435-39.  Plaintiff also challenged the oral admonishment she had received for failing to abide by that regulation in publishing an article.  *Id*. at 1432.  The court held that the challenge to the oral admonishment was subject to the CSRA procedures but that the challenge to the regulation itself was not, because the latter (the court said) "stands independently" from the former.  *Id*. at 1434.

Unlike the plaintiff in *Weaver*, the plaintiffs in this case do not challenge a regulation or rule that "stands independently" from the personnel actions of which they complain.  Although plaintiffs purport to allege a "Targeted Surveillance program" (Doc. 36 at 8, 9, 11), they do not (and cannot) cite any statute, regulation, or rule that constitutes such a "program."  Merely labeling and capitalizing alleged actions does not turn them into a "rule" or "program."  Rather, plaintiffs complain of a series or collection of personnel actions, including terminations, warning letters, negative performance reviews, threats of discipline, and other agency actions (Doc. 28 ¶¶ 88, 103, 104, 158 & pp. 29-31).  In other words, *only by assembling and alleging the experiences of several individuals can the plaintiffs infer a "program."*  Such an assemblage does not, however, "stand independently" from the personnel actions; a collection of individual experiences does not (and cannot) constitute a regulation.  Moreover, plaintiffs themselves have commingled bald allegations of a "program" with allegations of specific personnel actions against them.  They themselves have not chosen, either administratively or judicially, to separate out any alleged "program" from their own individualized personnel situations, but blend it all

into a seamless story of what they claim happened to them.  Thus, the plaintiffs cannot be heard

to say now that they have met some exception to broad CSRA preclusion.

Plaintiffs also assert that the court in *Weaver* "analyzed whether . . . a constitutional claim

for prospective injunctive relief to alleviate a 'chilling effect' on speech was cognizable in

federal court" despite the CSRA (Doc. 36 at 25).  *The phrase "chilling effect" does not,*

*however, appear in the* Weaver *decision*.  There is no "chilling effect" exception to CSRA

preclusion (*contra* Doc. 36 at 15-16, 24-28), and plaintiffs have cited no case law that espouses

such a "doctrine" (Doc. 36 at 28).  Thus, much of plaintiffs' argument about a "chilling effect"

on speech relates to the *merits* of their First Amendment claims, not to the issues of CSRA

preclusion.

Further, as other courts have held in other contexts, mere conclusory allegations of a

"policy" do not create a cause of action sufficient to depart from statutory review procedures,

and such allegations need not be accepted as true on their face.  For example, in *City of Rialto v.*

*West Coast Loading Corp.*, 581 F.3d 865 (9th Cir. 2009), the court held that a company's

assertion that it was challenging the "pattern and practice" of a federal agency did not create an

exception to statutory requirements for judicial review of the agency's individual determinations.

*Id*. at 872-78.  Noting that "the phrase 'pattern and practice' is not an automatic shortcut to

federal court jurisdiction," *id*. at 872, the court considered as factors whether "meaningful

judicial review" would be available under the prescribed statutory procedures and whether the

proffered challenge "depend[ed] on the facts of any given individual agency action."  *Id*. at 872-

76.  Similarly, in *Williams v. District of Columbia*, 771 F. Supp. 2d 29 (D.D.C. 2011), and other

cases, this Court has held that an allegation that an agency has failed to conduct a timely

evaluation under a disabilities statute, along with "conclusory assertion[s]" regarding "a policy,

custom, or practice" of failing to do so, does not adequately allege such a policy, custom, or practice, "in the absence of more specific facts." *Id*. at 31-32.[7]

Like the assertions of the company involved in *City of Rialto*, plaintiffs' challenge to the purported "Targeted Surveillance program" in this case would "depend on the facts of . . . individual agency action[s]." 581 F.3d at 876.  Furthermore, "meaningful judicial review" for plaintiffs' grievances is available under the prescribed CSRA procedures, *id*. at 875-76 – as suggested by their own pursuit of those procedures.[8]  In short, almost any employee or group of employees aggrieved by personnel actions could theoretically cast their claims as a challenge to an agency "program," and thus attempt to circumvent the CSRA process.  Under the foregoing case law and principles, however, the plaintiffs in this case should not be allowed to do so.

II.     The Foregoing Grounds for Dismissal Apply Equally to All
        of the Plaintiffs, Including Nicholas, Hardy, and Smith

Notwithstanding the foregoing, plaintiffs argue that the claims of plaintiffs Nicholas, Hardy, and Smith are not subject to CSRA preclusion because these plaintiffs are not, or were not, federal employees covered by the CSRA (Doc. 36 at 36-45).  This argument is incorrect, for various reasons that apply to all three of these plaintiffs and to each of them individually.

---

[7] Plaintiffs' argument based on *Martin v. Lauer*, 686 F.2d 24 (D.C. Cir. 1982), and *Jacobs v. Schiffer*, 47 F. Supp. 2d 16 (D.D.C. 1999) – regarding the "rights of federal employees to communicate with outside counsel" (Doc. 36 at 16-17, 22-23) – is simply a variation on the rule/policy argument.  In both *Martin* and *Jacobs*, the defendant agencies had issued memoranda or letters that communicated prohibitions or limitations on the plaintiffs' disclosure of information to their attorneys.  In any event, even if plaintiffs could raise a "right to communicate with counsel" in this action, they would have no viable claim based on a "right" to disclose proprietary information, whose public disclosure is statutorily prohibited.  *See* 21 U.S.C. § 331(j).

[8] Plaintiffs also rely (Doc. 36 at 25) on *United States v. NTEU*, 513 U.S. 454 (1995), and *Sanjour v. EPA*, 56 F.3d 85 (D.C. Cir. 1995) (en banc).  *NTEU*, however, involved the constitutionality of a federal statute, 5 U.S.C. app. 4, § 501(b), and *Sanjour* involved the constitutionality of a federal regulation, 5 C.F.R. § 2636.202(b) (1994).  The plaintiffs' allegations do not fall within *NTEU* or *Sanjour*, any more than they fall within the other cases cited above.

Plaintiffs do not respond to the assertion, in defendants' motion to dismiss, that all six of the plaintiffs herein have thrown in their lot together.  For some reason – presumably related to administrative and/or judicial strategy – plaintiffs have chosen to squeeze into one action the disparate claims of six individuals.  For plaintiffs Smith, Czerska, Wersto, and Vishnuvajjalla, who are or were clearly federal employees covered by the CSRA, this action is obviously an effort to circumvent the procedural requirements of the CSRA.  Perhaps they hope to avoid CSRA preclusion by joining with plaintiffs Hardy and Nicholas.  As for plaintiffs Hardy and Nicholas, perhaps they hope to gain some atmospheric advantage by joining with the other plaintiffs rather than pursuing their claims separately.[9]

Furthermore, the argument of plaintiffs Nicholas and Smith that they were not federal employees subject to the CSRA (Doc. 36 at 36-45) is also belied by the fact that they are currently pursuing complaints before the Office of Special Counsel regarding the same claims they raise in this action.  Alternatively, if Nicholas and Smith "were not civil servants" as they contend (Doc. 36 at 36), then they are seeking administrative relief to which they are not entitled.  In short, plaintiffs seem to be seeking some advantage by pursuing their claims both administratively and judicially at the same time.  They should not be permitted to do so, and this Court should require them to proceed through the mandatory CSRA process.

Finally, in the same section of their opposition, plaintiffs argue that plaintiff Robert Smith – admittedly a former federal employee – may not be able to challenge, under the CRSA, the FDA's failure to renew his appointment because his appointment was allegedly changed from the "career civil service" to the excepted service during the period of his employment (Doc.

---

[9] Plaintiffs do not respond to defendants' argument that Mr. Hardy's claims in this action should, at least, be severed for improper joinder (Doc. 31 at 19 n.13).  Plaintiffs must, therefore, be deemed to have conceded the correctness of this argument.  *See Clifton Power Corp. v. FERC*, 88 F.3d 1258, 1267 (D.C. Cir. 1996).

36 at 44).  Presumably, plaintiffs mean to assert that Dr. Smith's position was changed from the *competitive* service to the excepted service, since both types of position would fall within the term "career civil service."  *See Wyodak Resources Devel. Corp. v. United States*, 637 F.3d 1127, 1133 (10th Cir. 2011) (distinguishing "career civil service employees" from "political appointees").  In any event, such a change would have no bearing on whether an employee's judicial claim is precluded by the CSRA.  *See United States v. Fausto*, 484 U.S. 439, 448 (1988) (holding that CSRA precluded challenge to excepted-service employee's suspension).[10]

III.   Alternatively, the Claims of Plaintiff Hardy Must Be Dismissed
       for Additional Reasons Particular to Him

Assuming plaintiff Hardy's claims were not dismissed for the reasons stated above, they should be dismissed for other reasons specific to him.  That is, Mr. Hardy failed to exhaust the administrative remedies that apply to officers of the Public Health Service Commissioned Corps, and, in any event, he cannot receive meaningful relief here because his discharge was (and would be) statutorily required by his failure to secure a promotion and the Commissioned Corps' "up or out" requirement.  *See* Request for Stay of Personnel Action at 4 (Doc. 36-1, Ex. 7); *see also Special Counsel ex. rel. Hardy v. HHS*, 117 M.S.P.R. 174, 175 n.1 (2011).  The exhaustion requirements of the Commissioned Corps apply to Mr. Hardy, notwithstanding plaintiffs' arguments to the contrary.

A.   Mr. Hardy Failed to Exhaust the Applicable Administrative Remedies

Plaintiffs offer several arguments seeking to avoid dismissal for failure to exhaust administrative remedies, each of which is incorrect.  First, plaintiffs argue that the Board for Correction of PHS Commissioned Corps Records ("Corrections Board") could not have adjudicated Mr. Hardy's constitutional claims under Commissioned Corps Personnel Manual

---

[10] Indeed, amendments to the CSRA have expanded the administrative rights of excepted-service employees since *Fausto* was decided.

("CCPM") 49.9 (Doc. 36 at 41-42).  To the contrary, the D.C. Circuit has, in fact, required

exhaustion of administrative remedies where an officer of the PHS Commissioned Corps raised a

constitutional claim.  *See Mazaleski v. Treusdell*, 562 F.2d 703, 717, 721-22 (D.C. Cir. 1977)

(requiring exhaustion of administrative remedies before a Commissioned Corps officer could

seek judicial review of First Amendment retaliation claim).  In any event, regardless of whether

an administrative body can decide every issue the complainant wishes to raise, exhaustion of

administrative remedies is required because an administrative resolution may "obviate the need

for judicial intervention."  *See Bois v. Marsh,* 801 F.2d 462, 468 (D.C. Cir. 1986) (internal

quotation marks omitted); *see also Marine Mammal Conservancy, Inc. v. USDA*, 134 F.3d 409,

413-14 (D.C. Cir. 1998) (noting that administrative review can obviate the need for judicial

review and prevent a court from unnecessarily opining on complex constitutional issues).[11]

Second, plaintiffs argue that the Corrections Board could have not have provided

adequate relief under CCPM 49.9 and that it cannot order relief against the FDA (Doc. 36 at 42-

44).  However, the Secretary of Health and Human Services, acting through the Corrections

Board, is statutorily authorized to "correct *any . . . record of the Secretary's department* when the

Secretary considers it necessary to correct an error or remove an injustice."  10 U.S.C.

§ 1552(a)(1) (emphasis added).  Thus, the Corrections Board could have corrected, for example,

any of the evaluations made by FDA managers regarding Mr. Hardy.  In any event, any inability

of a uniformed service's corrections board to "grant full relief does not dispose of the exhaustion

requirement so long as the tribunal in question had the power to grant some pertinent relief."

*Guitard v. Secretary of the Navy*, 967 F.2d 737, 741 (2d Cir. 1992); *see Sanders v. McCrady*, 537

---

[11] Plaintiffs argue that exhaustion of the procedures in CCPM 49.9 is not mandatory
because 10 U.S.C. § 1558(f)(1), the statute that requires exhaustion, is not mentioned in CCPM
49.9's "authority" provision (Doc. 36 at 42).  Obviously, a regulatory scheme need not cite the
statute that makes its procedures mandatory.

F.2d 1199, 1201 (4th Cir. 1976) ("The board's inability to grant [the plaintiff] full relief . . . is not a controlling factor in determining whether [the plaintiff] should resort to the board before seeking judicial relief.").[12]

Third, plaintiffs assert that CCPM 26.1.5 was not a viable alternative avenue for Mr. Hardy because it expressly does not apply to board recommendations or decisions, such as promotions, retention, and separations (Doc. 36 at 41).  Nevertheless, although a formal grievance under CCPM 26.1.5 could not have prevented Mr. Hardy's ultimate non-promotion and separation, such a grievance can be used to raise preliminary "matter[s] of concern or dissatisfaction (such as working environment, working relationships with supervisors, other personnel, or officials)."  *See* CCPM 26.1.5(C)(1) (Doc. 31-2 at 2).  Thus, for example, Mr. Hardy could have used a grievance under CCPM 26.1.5 to complain of computer monitoring.  A complaining Commissioned Corps officer may ultimately request reconsideration regarding a CCPM 26.1.5 grievance by the Surgeon General.  *See* CCPM 26.1.5(F)(4) (Doc. 31-2 at 8-9).

Fourth and finally, plaintiffs assert that the recent enactment of legislation to apply the Armed Forces' whistleblower provisions to Commissioned Corps officers demonstrates that whistleblower claims could not be brought before the Corrections Board (Doc. 36 at 40-41).  However, the enactment of an amendment to apply *specific* whistleblower provisions to Commissioned Corps officers does not foreclose the possibility that *general* personnel provisions and protections could have been used to raise complaints related to whistleblowing.  Indeed, federal employees were able to bring claims of whistleblower retaliation under the CSRA even before

---

[12] Plaintiffs also argue that the Corrections Board's authority "[o]n its face" concerns only "the correction of records" (Doc. 36 at 42).  "Correction of records," however, is a term of art; a board for the correction of military records can make "substantive" changes.  *See Cargill v. Marsh*, 902 F.2d 1006, 1008 (D.C. Cir. 1990); *see also Van Drasek v. Lehman*, 762 F.2d 1065, 1071 (D.C. Cir. 1985) (noting that 10 U.S.C. § 1552 "authorizes boards for the correction of military records to award back pay").

enactment of the Whistleblower Retaliation Act, which merely strengthened protections that already existed.  *See Bonds v. Leavitt*, 629 F.3d 369, 380-81 (4th Cir. 2011).[13]

       B.     <u>Mr. Hardy Lacks Standing to Pursue His Claims Herein</u>

       Even if Mr. Hardy's claims were not dismissed for failure to exhaust (or for the other reasons described above), they should be dismissed for lack of standing.  As relief, Mr. Hardy seeks "to require that Defendants reinstate [him] into his position" with the Commissioned Corps (Doc. 28 at 40) – that is, into the position he occupied before the whistleblower retaliation of which he complains.  However, because of the Commissioned Corps' "up or out" requirement, *see* 42 U.S.C. § 211(g), the granting of the requested reinstatement would immediately be followed by Mr. Hardy's mandatory discharge pursuant to that requirement.  Moreover, a request for retroactive promotion – which Mr. Hardy has not made here – would be non-justiciable.  *See Kreis v. Secretary of the Air Force*, 866 F.2d 1508, 1511 (D.C. Cir. 1989) (holding that plaintiff's "request for retroactive promotion falls squarely within the realm of nonjusticiable military personnel decisions").  Plaintiffs assert that this argument must be incorrect because "the Secretary of Health and Human Services has ultimate authority over the Public Health Service" Commissioned Corps (Doc. 36 at 43 n.18), but that circumstance – nor, indeed, the Surgeon General's own presence as a defendant herein – does not change the fact that Mr. Hardy's non-promotion, which he has not challenged and cannot challenge, would make his reinstatement very brief.[14]

_____

     [13] In this regard, the floor statement of a single legislator, such as one Senator's statement that Commissioned Corps officers had "no recourse" before the recent amendment (Doc. 36 at 40-41), does not authoritatively state the law.  *See Edwards v. Aguillard*, 482 U.S. 578, 637-38 (1987).

     [14] Additionally, Mr. Hardy lacks standing to secure declaratory or injunctive relief regarding the alleged monitoring of his FDA computer because, even if he could somehow secure reinstatement to the PHS Commissioned Corps *and* a retroactive promotion in order to retain his position, he cannot show that he would again be assigned to the FDA and again be

IV.     Plaintiffs' Other Claims Should Also Be Dismissed

Plaintiffs' remaining claims – the ninth, eleventh, and twelfth causes of action – should

also be dismissed.  Nothing in plaintiffs' opposition memorandum establishes their standing to

pursue the ninth or eleventh causes of action, and they fail to rebut defendants' assertion that the

twelfth cause of action relies on a statute as to which there is no private right of action.

A.      The Ninth and Eleventh Causes of Action Must Be
        Dismissed for Lack of Standing

Plaintiffs' ninth cause of action attempts to plead a First Amendment "right to receive"

claim on behalf of plaintiffs Hardy, Smith, and Nicholas, asserting that the FDA's monitoring of

its employees' computer use "chills" current FDA employees from giving these plaintiffs

information, and thus "impedes" their access to information regarding medical devices and the

agency's conduct (Doc. 28 ¶¶ 178-84).  Seeking to establish "the existence of specific willing

speakers" as required under this theory, plaintiffs submit the affidavit of one current FDA

employee, Nancy Wersto, who is also one of the plaintiffs herein (Doc. 36-1, Ex. 4).[15]  *See*

*Taylor v. Resolution Trust Corp.*, 56 F.3d 1497, 1508 (D.C. Cir. 1995); *accord ACLU v. Holder*,

673 F.3d 245, 255 (4th Cir. 2011) (plaintiff must show that an "identifiable willing speaker"

would have spoken to her "but for the speech restriction"); *Pennsylvania Family Inst., Inc. v.*

*Black*, 489 F.3d 156, 166 (3d Cir. 2007) (plaintiff bears the "burden of identifying a willing

_____

subject to computer monitoring.  *See Los Angeles v. Lyons*, 461 U.S. 95, 101-10 (1983).

        [15] Plaintiffs also submit affidavits from Messrs. Nicholas and Smith, two of the plaintiffs
who allege this cause of action, but neither of them identifies any specific "willing speaker" who
remains an FDA employee (Doc. 36-1, Exs. 5, 6).  General assertions that unnamed current
employees no longer communicate with the plaintiffs do not establish that any such persons are
"willing" to communicate.  In any event, plaintiffs should not be permitted to supplement their
pleading with three affidavits, particularly since they have already had two opportunities to amend
their complaint.  *See J & J Sports Prod., Inc. v. Humphries Enters., LLC*, 715 F. Supp. 2d
71, 73 (D.D.C. 2010) (stating that plaintiff's "complaint [must] allege[] sufficient facts to
establish jurisdiction").

speaker'"). Ms. Wersto states that she is "fearful" and "cautious about" providing any information to plaintiff Smith and the other plaintiffs, and that she is "reluctant" to do so (Doc. 36-1, Ex. 4, ¶¶ 10-14). Ms. Wersto pointedly avoids saying, however, that she *would* provide information to these plaintiffs "but for" any FDA monitoring of computer use, or even that she now *refrains* from doing so in light of such monitoring – other than being "fearful," "reluctant," and "cautious."[16] Thus, plaintiffs still have not alleged the existence of a specific "willing speaker" as required for their "right to receive" claim.[17]

In their eleventh cause of action, plaintiffs allege that the FDA's monitoring of employee computers suppresses speech by agency employees and thus interferes with "the right of the public to learn information" (Doc. 28 ¶¶ 188-92). Defendants' motion to dismiss this claim relies on the oft-stated principle that a plaintiff must usually "assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *See Warth v. Seldin*, 422 U.S. 490, 499 (1975); *see also Electronic Privacy Info. Ctr. v. DHS*, 653 F.3d 1, 9-10 (D.C. Cir. 2011); *Dominguez v. District of Columbia*, 536 F. Supp. 2d 18, 24 (D.D.C. 2008). In response, plaintiffs invoke (Doc. 36 at 35-36) the principle that one may challenge a statute or regulation on its face under the First Amendment on the grounds that its "very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *See Broadrick v. Oklahoma,* 413 U.S. 601, 612 (1973). That principle does not apply here, however, as the plaintiffs do not challenge a statute or regulation on its face. *See Sabri v. United States*, 541 U.S. 600, 609-10 (2004) (noting the courts' "reticence" to permit

---

[16] Indeed, aside from any concerns about the monitoring of agency computers, Ms. Wersto and other FDA employees are statutorily prohibited from sharing propriety information with the public. *See* 21 U.S.C. § 331(j).

[17] Even aside from their failure regarding the "willing speaker" requirement, plaintiffs do not establish that the monitoring of government computers would "chill" a current employee from giving them information through other means, such as home computers or telephone calls.

"facial attacks alleging overbreadth" and that such challenges are permitted "in relatively few settings").  Thus, the ninth and twelve causes of action must be dismissed for lack of standing.

B.    The Twelfth Cause of Action Must Be Dismissed
      For Lack of a Private Right of Action

Plaintiffs' twelfth cause of action alleges violation of 5 U.S.C. § 7211, sometimes known as the "Lloyd-LaFollette Act."  As stated in defendants' motion, this provision is part of the CSRA, which does not provide a private right of action to seek relief for its violation.  *See Fornaro v. James*, 416 F.3d 63, 66-67 (D.C Cir. 2005).  Plaintiffs do not respond to this argument, so they must be taken as having abandoned this cause of action.  *See Mitchell v. National R.R. Passenger Corp.*, 407 F. Supp. 2d 213, 247 (D.D.C. 2005).

## CONCLUSION

Accordingly, for the reasons stated above and in defendants' motion to dismiss, all of plaintiffs' claims in this action should be dismissed with prejudice.

Dated:  January 31, 2013

Respectfully submitted,

STUART F. DELERY
Principal Deputy Assistant Attorney General

RONALD C. MACHEN JR.
United States Attorney

SUSAN K. RUDY, D.C. Bar 369112
Assistant Director

/s/ W. Scott Simpson

W. SCOTT SIMPSON, Va. Bar 27487

Attorneys, Department of Justice
Civil Division, Room 7210
Federal Programs Branch
Post Office Box 883
Washington, D.C. 20044
Telephone:  (202) 514-3495
Facsimile:   (202) 616-8470
E-mail: scott.simpson@usdoj.gov

COUNSEL FOR DEFENDANTS